**UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| Robert O'Connell and Sally O'Connell, and | ) | |
| Francis O'Connell and Roberta O'Connell, | ) | |
| | ) | |
| *Plaintiffs* | ) | |
| | ) | |
| v. | ) | Civil Action No. 2:22-cv-01326 |
| | ) | |
| Kenneth A. Luccioni, Stephen J. Denari, | ) | |
| Triad Advisors, LLC, Triad Advisors, Inc., | ) | |
| and Asset Management & Protection Corp., | ) | |
| | ) | |
| *Defendants* | ) | |
| | ) | |

**COMPLAINT OF ROBERT O'CONNELL AND SALLY O'CONNELL, AND
FRANCIS O'CONNELL AND ROBERTA O'CONNELL**

Plaintiffs, Robert O'Connell and Sally O'Connell, and Francis O'Connell and Roberta O'Connell, by and through their attorneys, RYAN & CONLON, LLP, 2 Wall Street, Suite 710, New York, New York 10005, respectfully allege as against the Defendants, Kenneth A. Luccioni, Stephen J. Denari, Triad Advisors, LLC, Triad Advisors, Inc., and Asset Management & Protection Corp., in their Complaint as follows:

## Table of Contents

Nature Of the Action…………………………………………………………………   3

The Parties………………………………………………………………………….   4

Jurisdiction and Venue……………………………………………………………..   6

Background …………………………………………………………………….…..   6


Counts

I.      Breach of Contract…………………………….………………………………..   15

II.     Breach Of Fiduciary Duty ………..……………………………………………   15

III.    Conversion……………………………………………………………………   16

IV.    Unjust Enrichment ……………………………………….……………………   17

V.     Breach Of Duty Of Good Faith And Fair Dealing…………………………......   18

VI.    Common Law Fraud …………………..……………………………………   19

## **Nature of the Action**

1.      The relationship between retail investors and a Registered Representative/Broker Dealer acting as a broker/dealer to execute securities transactions is based upon a tradition of placing the client's interests ahead of the firm's interest – "investor first" or "investor before the firm" – a special relationship dependent upon mutual respect and trust.  Accordingly, Defendants were obligated to observe high standards of commercial honor and just and equitable principles of trade in conducting their business and the representation of their clients.   Moreover, as wealth managers and financial planners, Defendants were obligated to recommend suitable investments for their clients consistent with their clients' investment objectives and risk tolerance levels on an ongoing basis.

2.      This lawsuit arises out of Defendants, Kenneth A. Luccioni, Stephen J. Denari, Triad Advisors, LLC, Triad Advisors, Inc., and Asset Management & Protection Corp.'s, egregious breach of their fiduciary and contractual duties to Plaintiffs as financial planners, wealth managers and brokers; Defendants' fraudulent conduct; and conversion and misappropriation of funds relating to Plaintiffs' retirement savings over many years.

3.      The Plaintiffs came to the Defendants at the end of their professional careers seeking retirement advice and assistance with the management of their retirement savings.  The Defendants were retained to provide counsel, advice, money management and financial planning services from 2005 through 2018.

4.      As a result of the Defendants' conduct, including the TRIAD Defendants complete lack of supervision and monitoring of the activities of its brokers and employees, Plaintiffs suffered catastrophic loss of retirement funds, including the complete collapse of the unsuitable and inappropriate "Volatility Index" LJM Preservation and Growth LP ("LJM Fund") funds on

February 5, 2018.  By way of omission and commission, Defendants engaged in an extended pattern of misrepresentations and recommendations of unsuitable investments in speculative ventures and volatile funds, resulting in the loss of substantial retirement savings.

5.     Defendants engaged in a misinformation campaign with regard to the viability and soundness of the Plaintiffs' investments and continually disregarded Plaintiffs' investment objectives; reasonable investment standards; and existing conflicts of interest on an ongoing basis to the detriment of Plaintiffs resulting in catastrophic financial loss, including the complete collapse of the LJM Fund on February 5, 2018.  During this same period, Defendants continued to reap significant financial reward in the form of ongoing management and incentive fees, as well as incentive awards for investments in completely illiquid, worthless and speculative real estate limited liability investments.

6.     In December 2019, Plaintiffs commenced a FINRA arbitration proceeding against Defendants arising out of the acts and omissions set forth herein and seeking similar relief.  On March 11, 2021, the FINRA Arbitration Panel dismissed the claim pursuant to FINRA Rule 12206(a) commonly referred to as the "six year" rule on the grounds that the investments in question "*had been in place for somewhere between ten and twelve years, thus clearly exceeding the six year claim eligibility rule set out in FINRA 12206*."  As the Plaintiffs' claims were dismissed pursuant to FINRA Rule 12206, Plaintiffs seek adjudication of all claims before this court in accordance with the Rule.

**The Parties**

7.     Plaintiffs, FRANCIS O'CONNELL and ROBERTA O'CONNELL were and still are residents of Nassau County, State of New York, residing at 55 Ocean Watch Court, Freeport, NY 11520.

8.      Plaintiffs, ROBERT O'CONNELL and SALLY O'CONNELL, were and still are residents of Nassau County, State of New York, residing at 77 Maple Avenue, Unit 103, Rockville Centre, NY 10021.

9.      Defendant, KENNETH A. LUCCIONI, ("LUCCIONI"), a natural person, is a resident of San Antonio, Texas, residing at 8800 Village Drive, Suite 106, San Antonio, TX 78217.

10.     Defendant, STEPHEN J. DENARI, ("DENARI"), a natural person, is a resident of Illinois, residing at 714 N Eastwood Avenue, Mount Prospect, Illinois 60056.

11.     Defendant, TRIAD ADVISORS, LLC. ("TRIAD LLC"), was and still is, a foreign limited liability corporation duly organized and existing under, and by virtue of, the laws of the State of Florida, and was and is a registered broker-dealer and a member firm of FINRA with its principal place of business located 5155 Peachtree Parkway, Norcross, Georgia 30092.

12.     Defendant, TRIAD ADVISORS, INC. ("TRIAD INC."), was and still is, a foreign business corporation duly organized and existing under, and by virtue of, the laws of the State of Georgia, and was and is a registered broker-dealer and a member firm of FINRA with its principal place of business located 5155 Peachtree Parkway, Norcross, Georgia 30092.

13.     Defendant, ASSET MANAGEMENT & PROTECTION CORP. ("AMPC"), was and still is, a foreign business corporation duly organized and existing under, and by virtue of, the laws of the State of Illinois, and was and is a registered broker-dealer and a member firm of FINRA with its principal place of business located 1460 Renaissance Drive, Suite 212, Park Ridge, Illinois 60068.

14.     Defendants, TRIAD INC. and AMPC, are wholly owned subsidiaries and affiliated entities of TRIAD LLC.

15.     Defendants, TRIAD LLC, TRIAD INC. and AMPC, will be collectively referred to as the "TRIAD Defendants."

16.     Prior to his ban from the industry LUCCIONI and DENARI were at all relevant times registered securities brokers, certified financial planners, registered investment advisers and at all times referenced herein, agents, representatives, and employees of the TRIAD Defendants.

**<u>Jurisdiction and Venue</u>**

17.     This Court has original jurisdiction over this action pursuant to 28 U.S.C. §1332 as the matter in controversy exceeds the sum of $75,000, exclusive of interest and costs and is between citizens of different states.

18.     Venue is proper in this Court, pursuant to 28 U.S.C. §1391(B) in that a substantial part of the events giving rise to the claim occurred in Nassau County, New York, where Plaintiffs reside.

**<u>Background</u>**

19.     Defendants contracted with Plaintiffs to provide various financial wealth management, retirement planning, financial planning and investment and brokerage services.  For a prolonged period leading up to and during Plaintiffs' retirement, Defendants repeatedly represented themselves as qualified investment professionals, advisors and brokers acting in the best interests of Plaintiffs for the purpose of retirement planning, security and preservation of capital and wealth.

20.     From 2005 through 2016, Defendant Luccioni, was a TRIAD employee, registered representative and broker assigned to the Plaintiffs' accounts.

21.     From March 2006 through the present, Defendant Denari was a TRIAD registered representative and broker assigned to the Plaintiffs' accounts.

22.     Luccioni recommended and placed Plaintiffs' retirement savings in the LJM Fund.

23.     In January 2017, Defendant Denari was formally designated the Plaintiffs account representative, financial advisor, and broker.

24.     While Defendant Denari became Plaintiffs' Registered Representative of record in January 2017, Denari was intimately involved with Plaintiffs' investments and back-office activities for years prior.

25.     Defendants received compensation, including payments in the form of "Management and Incentive Fees," for Plaintiffs' investments in the LJM Fund on an ongoing basis.

26.     Following a disciplinary investigation, in 2018 FINRA barred Defendant Luccioni from acting as a broker or otherwise associating with a broker-dealer firm.

27.     At no time were Plaintiffs advised or notified by Defendants of any disciplinary complaint or the aforementioned action taken by FINRA.

28.     At no time were Plaintiffs advised or notified that Defendant Luccioni's employment with TRIAD was terminated in 2016.

29.     Defendants, TRIAD LLC and TRIAD INC. had an ongoing duty to supervise and monitor the activities of their representatives, including Luccioni and Denari, including supervision and monitoring of investment recommendations, concentration levels, high-risk investments, suitability, client risk tolerance levels and client investment expectations.

30.     As of February 5, 2018, Plaintiffs' investments with and under the control of Defendants were highly concentrated in the LJM Fund, which included option exercise risk, futures contract risk, excess leverage risk and liquidity risk, with exposure to unlimited losses, as well as illiquid real estate trust investments.

31.     Defendants failed to communicate and disclose to Plaintiffs the true nature of the risk and options strategy employed by the LJM Fund.

32.     Under any analysis, the LJM Fund qualified as a high risk, volatile and high fee fund.

33.     Defendants failed to communicate and disclose to Plaintiffs the high risk, intractable and illiquid nature of real estate trust investments promoted by Defendants, compounding the issue of unsuitable investments which were not suitable to Plaintiffs' investment objectives and risk tolerance levels.

34.     Defendants failed to abide by the suitability standards set by FINRA Rule 2111 by failing to diversify the Plaintiffs' investment allocations to satisfy the Plaintiffs' risk tolerance.

35.     Defendants failed to recommend any diversification strategy during the life of the LJM Fund investment.

36.     In 2017 Defendant Denari recommended against liquidation.

37.     On February 5, 2018, the LJM fund collapsed losing approximately 85% of its $812 Million under management and was forced to liquidate all remaining investor capital and shuttered its doors.

38.     The collapse of the fund resulted in significant losses to its investors, including Plaintiffs.

**Plaintiffs - Francis and Roberta O'Connell:**

39.     In 2005 Francis and Roberta O'Connell entered into an agreement with Defendants to act as Plaintiffs' broker-dealer, agent and financial advisor with respect to the management of Plaintiffs' investments and retirement savings.

40.     At the urging of Defendants, Francis O'Connell and Roberta O'Connell invested a total of $300,000 in the LJM Funds with an additional $75,000 invested in speculative real estate limited liability ventures that are intractable and worthless.

41.     On an ongoing basis from 2005 through 2018 Defendants acted as Plaintiffs financial advisers, brokers and investment planners.

42.     At the outset of their relationship, Luccioni was the primary representative while Denari acted as an assistant with regard to the transactions and reporting.   Over time, Denari assumed a more senior and primary role in the management of Plaintiffs' funds and dealt directly with Plaintiffs on investment matters.

43.     During that period of time and on an ongoing basis, Defendants promoted unsound and high-risk positions in violation of and contrary to Plaintiffs' investment objectives; and failed to address the unacceptable concentration levels and unsuitable investments at every turn.

44.     Defendants encouraged Plaintiffs to maintain their positions with LJM and other investments.

45.     Upon the recommendation and urging of Defendant Denari, Plaintiffs, Francis O'Connell and Roberta O'Connell, invested an additional $70,000.00 in the LJM Fund in 2017, just months before its complete collapse.

46.     In 2017 and prior to the LJM Fund's collapse, Defendant Denari was paid substantial origination and performance fees on the Plaintiffs' investments.

47.     As of January 31, 2017, Plaintiffs had approximately $940,000.00 under management with Defendants with $654,142.00 invested in the LJM Fund.

**Plaintiffs - Robert and Sally O'Connell:**

48.     In 2006, Robert and Sally O'Connell entered into an agreement with Defendants to act as Plaintiffs' broker-dealer, agent and financial advisor with respect to the management of Plaintiffs' investments and retirement savings.

49.     At the urging of Defendants, Robert and Sally O'Connell made their initial LJM Fund investments in 2006.  As of February 1, 2008, Plaintiffs had invested $300,000.00 of their retirement savings in the LJM Fund.

50.     Similar to his brother Francis, Robert O'Connell invested an additional $250,000.00 in speculative real estate limited liability ventures that are worthless and in essence, contracts of adhesion.

51.     In 2017 and prior to the LJM Fund's collapse, Defendant Denari was paid substantial origination and performance fees on the Plaintiffs' investments.

52.     As of January 31, 2017, Plaintiffs had approximately $868,931.00 under management with Defendants in the LJM Fund.

53.     As a result of the collapse, Plaintiffs lost approximately $741,130.00 of their retirement funds.

**The Defendants:**

54.     Defendants failed to respond adequately to the placement of inappropriate and unsuitable investments for Plaintiffs.

55.     In an effort to avoid safeguards and oversight, Defendants engaged in a campaign to transfer Plaintiffs' retirement funds into self-directed non-discretionary accounts lacking oversight and compliance protocols that would have alerted Plaintiffs to the inappropriate

investment positions, account activity and improper conduct of Defendants and risk to Plaintiffs' retirement funds and capital.

56.     On numerous occasions, Defendants made false and misleading representations as to the suitability, security, liquidity and return on investment with regard to the LJM Fund and real estate trust investments while failing to disclose critical information concerning the high risk and speculative nature of said investments and failing to disclose Defendants' financial interest in said investments and self-dealing.  Moreover, on numerous occasions Defendants urged Plaintiffs to incur additional debt by way loans and/or mortgages to fund additional investment in LJM.

57.     At all times herein, Plaintiffs relied to their detriment on the improper, false, inaccurate and unsuitable representations and statements of Defendants.

58.     As the Plaintiffs' brokers, investment advisers and financial planners, Defendants were responsible for managing Plaintiffs retirement funds and accounts; supervised, recommended and executed numerous transfers of retirement funds into improper and unsuitable investments, as well as, reviewed, approved and recommended various investments under the claim of wealth preservation and retirement security which were false, misleading, self-serving, adverse to Plaintiffs' interests and in violation of the Investment Advisor Act of 1940.

59.     Defendants had a duty to know their clients - Plaintiffs.

60.     That Defendants had a duty of care and loyalty to Plaintiffs and were bound to act in the Plaintiffs' best interests, disclose and avoid conflicts of interest, disclose accurate information regarding the high risk and speculative nature of the investments recommended and transacted by Defendants, and at all times to provide suitable investment advice.

61.     Under any analysis, the LJM fund qualified as a high risk, volatile and high fee fund.  The LJM fund employed an options strategy which exposed its investors to unlimited losses

through an options strategy known as a "Short Straddle" on volatile futures contracts. This deceptively named investment fund - *Preservation and Conservative Growth LP*- promoted by Defendants was anything but conservative or suitable for Plaintiffs.

62.    As of December 2017, Defendants had allowed Plaintiffs to invest a grossly inappropriate percentage of their funds under management with improper, unsuitable, concentrated and inappropriate investment vehicles, including the LJM Fund and the speculative real estate trust investments.

63.    In the months and years leading up to the LJM collapse, Defendants engaged in a pattern of misconduct and executed numerous transactions and activities to preserve the high concentration.

64.    That for an extended period of time prior to the collapse of the LJM fund, Defendants were aware of the inappropriate nature of the Plaintiffs investments, including the substantial investment in the LJM Fund and had actual knowledge and notice of the improper, self-dealing conduct of Luccioni and Denari with regard to Plaintiffs' investments and transactions that resulted in the loss to Plaintiffs.

65.    That for an extended period of time prior to the collapse of the LJM Fund, Defendants knew and/or should have known that Plaintiffs were improperly situated with regard to their investments, retirement planning and wealth management and were exposed to significant risk.

66.    That for an extended period of time prior to the collapse of the LJM fund, the Triad Defendants knew and/or should have known that their agents and employees, Defendants Luccioni and Denari, were engaging in improper conduct and self-dealing resulting in significant harm and financial loss to Plaintiffs.

67.    That with such knowledge and notice and with disregard for same and the well-being, financial security and protection of their clients/Plaintiffs, the TRIAD Defendants  and Defendants  Luccioni and Denari, authorized, consented to and assisted in the improper transfer and/or investment of large sums of Plaintiffs retirement funds into highly volatile, inappropriate and unsuitable investments and other highly irregular investments vehicles and transactions in direct violation of industry standards and acceptable practices, as well as, in violation of the TRAID Defendants' own internal rules, regulations and guidelines.

68.    That for an extended period of time prior to the collapse of the LJM Fund, TRIAD Defendants and Defendant Denari, knew and/or should have known that Luccioni was under investigation and ultimately barred by the SEC for securities violations and other bad acts and failed to disclose same to its clients and investors, including Plaintiffs.

69.    That the improper, irregular, unsuitable and destructive investments and improper self-dealing of Defendants included the following investments:

   a)  The LJM Fund
   b)  Hill Country Partners
   c)  Farm To Market Development Partners
   d)  Longhorn
   e)  Round Rock Development
   f)  Trident Healthcare Properties
   g)  Shadow Retail Partners

all of which were unsuitable, inappropriate and irregular investments for Plaintiffs; were transactions which Defendants had undisclosed financial interests in; and constituted self-dealing.

**The Duty to Monitor Brokers, Employees and Accounts, and Take Action**

70.     Standard industry practice requires that financial and investment advisors and brokers such as the TRIAD Defendants and their agents and employees, including Defendants, Luccioni and Denari, fully understand the risk tolerance, investment objectives and business in which their customers and clients are engaged.  This duty, referred to as the responsibility to "know your customer," ("KYC") is critical to determining what investment activities may be suspicious and/or unsuitable.

71.     It was also standard industry practice for financial institutions to perform KYC on their clients.  Many investment advisors and institutions have entire departments devoted to this one task and to making sure KYC is performed thoroughly and is constantly monitored and recorded.

72.     The TRIAD Defendants and Defendants Luccioni and Denari were well positioned to know and evaluate the suitability of Plaintiffs' retirement fund investments because Defendants have access to vast amounts of information about Plaintiffs, their age, employment status and desire to preserve capital.  But instead of reviewing the investment portfolio and investment activity and investigating for suitability and risk, the Defendants allowed Luccioni and Denari to continue promote and increase Plaintiffs' risk and exposure to highly inappropriate investments.

73.     Such investments and activity should have triggered an investigation by the TRIAD Defendants.

74.     The TRIAD Defendants ignored improper practices and suspicious activity by Luccioni and Denari and the client accounts and/or TRIAD's monitoring system failed to alert the TRIAD Defendants to the unusual risk and activity.  Further, the TRIAD Defendants, ignored obvious warnings regarding Luccioni and Denari activities.

## **COUNT I**

**Breach of Contract against all Defendants**

75.     Plaintiffs repeat and reallege each and every allegation set forth in paragraphs 1 through 73 of this Complaint with the same full force and effect as if more fully set forth at length herein.

76.     The Defendants entered into a contract and/or contracts with Plaintiffs to provide investment banking, retirement and financial wealth management services, in a professional, independent lawful manner in compliance with industry standards.

77.     Defendants breached the aforesaid contracts by failing to perform the contracted for services consistent with legal, industry and regulatory standards.

78.     All conditions precedent to the bringing of this action have been performed, or have occurred, or have been waived or excused by Defendants.

79.     As a direct and proximate result of the foregoing, Plaintiffs are entitled to recover an amount to be determined at the final hearing of this action, but believed to be no less than $1,800,000.00, plus pre-judgment interest at the legal rate.

**COUNT II**

**Breach Of Fiduciary Duty As Against All Defendants**

80.     Plaintiffs repeat and reallege each and every allegation set forth in paragraphs 1 through 79 of this Complaint with the same full force and effect as if more fully set forth at length herein.

81.     Defendants owed a fiduciary duty of loyalty, good faith and care to Plaintiffs and were required to adhere to the fiduciary standards as described by the Investment Advisers Act of 1940 and all other applicable laws, SEC Codes, Rules and Uniform Requirements.

82.     Defendants breached their fiduciary duties owed to Plaintiffs by engaging in a course of conduct, described above, which caused substantial damage to Plaintiffs.

83.     As a direct and proximate result of Defendants' breaches of fiduciary duty, Plaintiffs have lost and/or been deprived of a significant portion of their retirement funds and earnings to which they were entitled.

84.     As a direct and proximate result of the foregoing, Plaintiffs are entitled to recover an amount to be determined at the final hearing of this action, but believed to be no less than $1,800,000.00, plus pre-judgment interest at the legal rate.

## COUNT III

## Conversion

85.     Plaintiffs repeat and reallege each and every allegation set forth in paragraphs 1 through 84 of this Complaint with the same full force and effect as if more fully set forth at length herein.

86.     The Defendants were responsible for servicing and maintaining Plaintiffs' retirement portfolio and investment accounts and were the registered investment advisers and brokers on same.

87.     By virtue of servicing, managing and maintaining Plaintiffs' accounts, the Defendants were required to monitor the Clients' investment activities.  It was this obligation that should have led the Defendants to uncover a number of red flags indicating that the investments promoted and made by Luccioni and Denari were improper, unsuitable, and irregular.

88.     Rather than monitoring the advisers and brokers and investigate the red flags, the Defendants intentionally and/or negligently turned a blind eye in a manner inconsistent with their

obligations under various investment banking and financial services industry rules and regulations in order to reap profits and fees from the Plaintiffs' investments.

89.     The Defendants' failure to alert Plaintiffs to the risk and improper conduct of Luccioni and Denari with regard to the handling of Plaintiffs' investments and/or Luccioni and Denari's brokerage and financial planning services while the TRIAD Defendants performed their required investigations resulted in the loss of Plaintiffs' funds.

90.     The Defendants are therefore liable to Plaintiffs for having wrongfully converted these monies, in the form of fees generated to the Defendants, and are now obligated to return all such monies.

91.     The collection of fees is an interference of Plaintiffs' property rights to such fees to the exclusion of their rights to such monies.

92.     Plaintiffs have a right to the possession of the fees collected by Defendants.

93.     As a direct and proximate result of the foregoing, Plaintiffs are entitled to recover an amount to be determined at the final hearing of this action, but believed to be no less than $1,800,000.00, plus pre-judgment interest at the legal rate.

## COUNT IV

### Unjust Enrichment As Against All Defendants

94.     Plaintiffs repeat and reallege each and every allegation set forth in paragraphs 1 through 93 of this Complaint with the same full force and effect as if more fully set forth at length herein.

95.     The Defendants have been unjustly enriched.  The Defendants have wrongfully and unconscionably benefitted from collection of fees, commissions, stock awards and/or other

compensation for which they did not in good faith earn by providing the expected services and fulfilling their obligations to Plaintiffs and all at the expense of Plaintiffs.

96.     The Defendants have benefitted greatly from their relationship with Plaintiffs and have taken vast sums in fees, commissions, profits and undisclosed compensation from their investment activities with Plaintiffs.

97.     Faced with the prospect of losing fees and profits, the Defendants chose to ignore compelling evidence that the LJM Fund and other investments were highly inappropriate, unsuitable and irregular.  As a result, the Defendants have been enriched at the expense of Plaintiffs.

98.     Equity and good conscience require full restitution of the monies lost and monies received by the Defendants from the fees generated from the activities in Plaintiffs accounts.  This includes not only the money and other compensation Defendants received, but also the proceeds of that money and other awards.  Any profits and fees earned with the money the Defendants received must be returned to Plaintiffs.

99.     As a direct and proximate result of the foregoing, Plaintiffs are entitled to recover an amount to be determined at the final hearing of this action, but believed to be no less than $1,800,000.00, plus pre-judgment interest at the legal rate.

**COUNT V**

**Breach Of Duty Of Good Faith And Fair Dealing As Against All Defendants**

100.     Plaintiffs repeat and reallege each and every allegation set forth in paragraphs 1 through 99 of this Complaint with the same full force and effect as if more fully set forth at length herein.

101.    Implicit in every contract is a duty of good faith and fair dealing.  Defendants breached their duty of good faith and fair dealing to Plaintiffs by their conduct as set forth above and refusing to disclose relevant investment information and conflicts of interest.

102.    Plaintiffs were damaged as a direct and proximate result of Defendants' breaches of duty.

103.    As a direct and proximate result of the foregoing, Plaintiffs are entitled to recover an amount to be determined at the final hearing of this action, but believed to be no less than $1,800,000.00, plus pre-judgment interest at the legal rate.

## COUNT VI

## Common Law Fraud

104.    Plaintiffs repeat and reallege each and every allegation set forth in paragraphs 1 through 103 of this Complaint with the same full force and effect as if more fully set forth at length herein.

105.    As set forth above, with the intent to defraud, the Defendants made numerous intentional misrepresentations of material fact to Plaintiffs, including false representations concerning the risk exposure, liquidity and appropriateness of investments recommended to Plaintiffs by Defendants.

106.    Those misrepresentations and omissions were intended to induce (and did induce) Plaintiffs to:

   a) Invest significant retirement monies in the LJM Fund and inappropriate and speculative real estate ventures to the benefit of Defendants;

b) Transfer retirement funds from institutional funds and financial advisors and funds with adequate safeguards and protocols and invest in "independent" non-discretionary funds and relinquish control over retirement savings at the request, recommendation and direction of Defendants;

c) Invest in restricted, unsuitable, irregular and fraudulent investments resulting in loss;

d) Access lines of credit and other debt exposure at the urging of Defendants to invest in said investments resulting in loss;

107.    Plaintiffs were reasonable in relying on and did rely to their detriment on the representations of the Defendants – Plaintiffs' investment advisers.

108.    Plaintiffs were damaged as a direct and proximate result of the Defendants' material misrepresentations and omissions.

109.    As a direct and proximate result of the foregoing, Plaintiffs are entitled to recover an amount to be determined at the final hearing of this action, but believed to be no less than $1,800,000.00, plus pre-judgment interest at the legal rate.

110.    That by reason of the Defendants' fraud, Plaintiffs are entitled to punitive damages.

**WHEREFORE**, Plaintiffs, ROBERT O'CONNELL AND SALLY O'CONNELL, and FRANCIS O'CONNELL AND ROBERTA O'CONNELL, demand an award and judgment against Defendants, KENNETH A. LUCCIONI, STEPHEN J. DENARI, TRIAD ADVISORS LLC, TRIAD ADVISORS INC., and ASSET MANAGEMENT & PROTECTION CORP., jointly and severally as follows:

A.    On Count I on behalf of Plaintiffs an amount to be determined at the final hearing of this action, but believed to be no less than $1,800,000.00, plus pre-judgment interest at the legal rate;

B.   On Count II on behalf of Plaintiffs an amount to be determined at the final hearing of this action, but believed to be no less than $1,800,000.00, plus pre-judgment interest at the legal rate;

C.   On Count III on behalf of Plaintiffs an amount to be determined at the final hearing of this action, but believed to be no less than $1,800,000.00, plus pre-judgment interest at the legal rate;

D.   On Count IV on behalf of Plaintiffs an amount to be determined at the final hearing of this action, but believed to be no less than $1,800,000.00, plus pre-judgment interest at the legal rate;

E.   On Count V on behalf of Plaintiffs an amount to be determined at the final hearing of this action, but believed to be no less than $1,800,000.00, plus pre-judgment interest at the legal rate;

F.   On Count VI on behalf of Plaintiffs an amount to be determined at the final hearing of this action, but believed to be no less than $1,800,000.00, plus pre-judgment interest at the legal rate;

G.   Treble, Exemplary and Punitive Damages;

H.   Attorneys' fees;

I.   Costs and disbursements; and

J.   Such other and further relief as this Court deems just and proper.

## JURY DEMAND

The Plaintiffs demand a trial by jury of all issues so triable pursuant to Rule 38 of the Federal Rules of Civil Procedure.

Dated: New York, New York
        March 10, 2022

                                    RYAN & CONLON, LLP

                                    _____
                                    Kieran J. Conlon, Esq. (KJC 0969)
                                    *Attorneys for Plaintiffs*
                                    2 Wall Street, Suite 710
                                    New York, New York 10005
                                    (212) 509-6009 (T)
                                    KConlon@ryanconlon.com